**People of the State of Illinois, Appellee, v. Ruth Dell, Appellant.**

Gen. No. 65–135.

Second District.

December 20, 1966.

Julius Lucius Echeles, of Chicago, for appellant.

Bruno W. Stanczak, State's Attorney, of Waukegan, and William Graham and Jack Hoogasian, Assistant State's Attorneys, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The defendant was convicted of theft after a jury trial in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, and sentenced to a term of five to ten years in the Illinois State Reformatory for Women.

The indictment, filed December 7, 1964, charged that the defendant "committed the offense of theft, in that she knowingly obtained control over 129 pairs of trousers, having a value exceeding One Hundred Fifty Dollars ($150), the property of Myron Steinberg, knowing that said trousers had previously been stolen from Myron Steinberg by another and Ruth Dell thereafter knowingly abandoned such trousers in such manner as to deprive Myron Steinberg permanently of the use and benefit of said trousers, in violation of Section 16–1(d), Chapter 38, Illinois Revised Statutes 1963. . . ."

This appeal is brought on defendant's contentions that there was a fatal variance between the proof of ownership of the pants and the ownership alleged in the indictment; that there was no proof that the pants introduced into evidence were ever possessed by the defendant; that there was no proof that the defendant knew that the pants allegedly in her possession were stolen; that there was no proof as to the value of the pants; that the defendant was denied her right to trial by jury in that the court directed the jury to evaluate the pants at $250; that the defendant was denied a fair trial because the State attempted to introduce evidence of other, unrelated crimes; and, finally, that the conviction cannot be sustained as it is based on the uncorroborated and improbable testimony of an accomplice to the alleged crime. We will deal with each of these contentions in the order we have indicated.

As we have seen, the indictment stated that the trousers were "the property of Myron Steinberg." At the

trial, Steinberg testified that he was a partner in a business known as the Illinois Railroad Salvage Store. Upon his arrival at the store on the morning of July 21, 1964, Steinberg noticed that it was in disarray and that an entrance had been accomplished by the removal of five or six cement blocks from the south wall. On cross-examination, he stated that his partner was Norman Cutler.

Cutler testified that he was a partner of the Salvage Store and that on July 21 he noticed, in addition to the facts related by Steinberg, that the entire stock of men's work pants was missing. When asked if he recognized People's Exhibit No. 1 for identification, consisting of 129 pairs of pants, Cutler replied "Those are my pants." Later, Cutler was asked who owned People's Exhibit No. 1 on July 20, 1964, and the following colloquy resulted:

"A. I did.
"Q. In addition who else owned it?
"A. I have a partner.
"Q. What is his name?
"A. Myron Steinberg."

The defendant cites several Illinois cases to the point that the specific ownership of stolen property is an essential allegation in an indictment and, as such, must be proven, as laid in the indictment, at the subsequent trial. The People v. Cohen, 352 Ill 380, 382, 185 NE 608 (1933); The People v. Krittenbrink, 269 Ill 244, 245, 109 NE 1005 (1915). The reason for the rule was to permit the defendant to plead either a prior acquittal or conviction in the event of a later prosecution for the same offense. The People v. Smith, 341 Ill 649, 651, 173 NE 814 (1930).

However, under the Criminal Code of 1961, the owner of property as used in the section entitled "Part C. Offenses Directed Against Property" is defined as follows:

". . . . . 'owner' means a person, other than the offender, who has possession of or any other interest in the property involved, even though such interest or possession is unlawful, and without whose consent the offender has no authority to exert control over the property." (Ill Rev Stats 1963, c 38, § 15–2.)

■ Subsequent cases have held that this section provides that specific ownership of the stolen property in the person named in the indictment is not necessary if it is shown that he has some possessory interest in the property at the time of the offense, such as an agent of the owner or bailee. The People v. Hansen, 28 Ill2d 322, 338, 339, 192 NE2d 359 (1963); People v. Tomaszek, 54 Ill App2d 254, 261, 262, 204 NE2d 30 (1964).

Here, Cutler indicated that the trousers were owned by his partner and himself, that is, that they were partnership property. It is true that the indictment does not aver that the trousers were owned by the partnership but Steinberg, as a partner, clearly had a right of possession "or other interest" in the property as required by section 15–2. We, therefore, feel that the ownership of the trousers was adequately established at the trial as alleged in the indictment.

■ Charles Freberg, the key witness for the State, a twenty-one-year-old service station attendant, testified that he received a telephone call from the defendant at approximately 2:00 p. m. on July 21, 1964, and that she informed him that "she had some pants for me, if I wanted to come up to the house and pick them up in the evening." Accordingly, Freberg visited the defendant's house at about 6:30 p. m. that evening and went to her bedroom with the defendant, her son, Jeffery, one Rodney Gummow, and another woman named "Pat." Freberg stated that the pants that comprised People's Exhibit No. 1 were stacked on the bed and that the defendant "told me that she wanted me to sell the pants for her; that

she wanted a dollar a pair for her and anything that I could get over that I could have." Freberg and the others then carried the pants to the trunk of his car and he subsequently sold them for $175. Freberg's version of what took place at the defendant's home is sharply controverted by the testimony of Rodney Gummow. Nevertheless, Freberg's testimony was competent evidence, to be weighed and evaluated by the jury, that the pants were in the possession of the defendant. While no direct proof was introduced to show that the defendant knew at that time that the pants were stolen, such knowledge can be established by indirect or circumstantial evidence. The People v. Stewart, 20 Ill2d 387, 392, 169 NE2d 796 (1960); The People v. Grodkiewicz, 16 Ill2d 192, 197, 157 NE2d 16 (1959). Indeed, although guilty knowledge is an essential element of the crime, direct evidence of that knowledge is seldom available. It is sufficient if the circumstances that surround the possession of the property are such to induce a belief in a reasonable mind that the possessor had knowledge that the property was stolen. The People v. Lindstrom, 9 Ill2d 616, 618, 138 NE2d 495 (1956). The defendant's unexplained possession of 129 pairs of men's wash pants within a short time after their disappearance; their location in the bedroom of her home; and her request of Freberg, a service station attendant, to sell them for $1 per pair, are all circumstances that could reasonably induce a belief that she was aware that they were stolen. We are of the opinion that the conclusion of the jury that the guilty knowledge of the defendant in this respect was proven beyond a reasonable doubt is supported by the evidence.

■ The defendant next urges that since there was no evidence of the fair cash market value of the trousers at the time and place of the theft, the conviction must be reversed. She points out that in a prosecution for theft that the value of the property determines the seriousness of the offense and, hence, the punishment and

324

that, therefore, the market value of the pants was of great importance in her case and should not have been left to vague, indefinite and uncertain proof. The only evidence introduced as to the value of the pants was the testimony of Norman Cutler. He stated that he had purchased trousers for his business for a period of seven years and that during that time he had purchased some 7,000 pairs of trousers. Cutler was then asked as to his opinion as to the "value" of the trousers in People's Exhibit No. 1. He replied "$250." No evidence was offered by the defense to rebut that evaluation.

 It has been held that testimony in regard to the value of stolen property may be received in response to a question as to its "value" or "worth" and be sufficient proof, by itself, of the market value at the time of the alleged crime in the absence of any objection. The People v. Officer, 10 Ill2d 203, 206, 139 NE2d 773 (1957) ; The People v. Mowry, 6 Ill2d 132, 140, 126 NE2d 683 (1955).

 In view of his past experience in the business, Cutler was qualified to give his opinion as to the value of the trousers before the court, and, since no evidence to the contrary was offered, that opinion, as expressed, was adequate evidence of the market value of the property.

 The defendant also raises the point that the trial court directed the jury to find that the value of the trousers was $250 and that she was consequently denied her right to trial by jury. There is a sharp disagreement between the parties as to the completion of the verdict form as to value. The defendant claims that the trial judge had written in the figures "$250" as the value of the property before the verdict form was submitted to the jury. The State insists that the value was added by the jury. We note, however, that this point was not raised by the defense in its post-trial motions for judgment notwithstanding the verdict, in arrest of judgment, or for a new trial. Accordingly, we will not consider it

for the first time on review. The People v. Irwin, 32
Ill2d 441, 443, 207 NE2d 76 (1965) ; People v. Bridges, 67
Ill App2d 236, 239, 214 NE2d 539 (1966).

██ ██ Freberg was asked, on direct examination,
whether he had ever been requested by the defendant in
the past to sell anything for her. Over objection, he
stated that on five or six prior occasions, she requested
him to sell "rings and watches." At this point, the court
sustained the objection of the defense and advised the
jury to disregard his testimony in that respect. The
defendant contends that the court should have granted
the motion for a mistrial. The question and answer
were clearly improper. However, the trial court ef-
fectively cured the error by its prompt admonition to
the jury to disregard the exchange.

Lastly, it is argued that the conviction is based solely
on the uncorroborated testimony of Charles Freberg, an
admitted accomplice, and that the testimony itself is so
burdened with contradictions and improbabilities as to
be wholly lacking in credibility.

██ ██ The uncorroborated testimony of an accom-
plice is always scrutinized carefully due to its inherent
weaknesses. The People v. Hermens, 5 Ill2d 277, 285, 125
NE2d 500 (1955) ; People v. Zaeske, 65 Ill App2d 495,
212 NE2d 734 (1965). Under the law in Illinois, how-
ever, it can be sufficient by itself to sustain a conviction
if it establishes the guilt of the accused beyond a reason-
able doubt. The People v. Hansen, supra, p 332; The
People v. Bugg, 345 Ill 210, 216, 177 NE 718 (1931).

An affidavit signed by Freberg in January of 1965
appears in the record. In that affidavit, Freberg states
that Ruth Dell had no connection with the robbery of
the Railroad Salvage Store in July of 1964. Freberg
further admits telling an attorney in August of 1964
that he had only implicated the defendant in the crime be-
cause of threatened prosecution. He also admitted a
telephone call to the defense counsel shortly before the

trial for advice as to his testimony. During the trial, Freberg testified that although he had sold the trousers for only $175, he paid the defendant $200 "just to be over with it." The defendant maintains that these self-contradictions and improbable sequence of events as related by Freberg render his testimony insufficient upon which to predicate the conviction.

A close reading of Freberg's testimony reveals, however, a clear thread of consistency, and that consistency is based on his persistent, deep fear of the defendant. He testified that after receiving an offer of $175 for the pants that Ruth Dell told him she would take no less than $200. Therefore, on July 22, 1964, he paid her the $200 and told her he "didn't want to have any more" and he gave her $25 of his own money "just to be over with it." After he was apprehended by the police, he received a phone call from the defendant on July 28 in which she told him that "she found out I squealed on her, and she was going to send a couple of boys down to pick me up and bring me to her house." Later that evening, Gummow and Jeffery Dell did drive to the service station where Freberg was employed to find him but were diverted by his employer. On another occasion, shortly thereafter, Freberg while in his car, was followed by the defendant and three men until he succeeded in evading them. He described the defendant's home as set back 600 to 700 feet from the road on a tract of 3 or 4 acres of land, entirely surrounded by a large cyclone fence, and that to gain entrance it was necessary to identify one's self over a loud speaker before the gates would open mechanically. He explained that his statements to the lawyers and his affidavit were as a result of "fear" and "worry" of reprisals from the defendant.

It is commonplace to recite that the credibility of the witness and the weight of the evidence are matters within the province of the jury and the trial court. If they are convinced that the accused is guilty

■■■

beyond a reasonable doubt, even on the uncorroborated testimony of an accomplice, we will not substitute our judgment for theirs unless it plainly appears that such a degree of proof is lacking. The People v. Hansen, supra, p 332; The People v. Rudnicki, 394 Ill 351, 357, 68 NE2d 723 (1946).

■■ From the record before us, it does not appear that the court or jury abused their function in this instance. The judgment and conviction of the trial court will be affirmed for the reasons enumerated.

Judgment affirmed.

MORAN, P. J. and SEIDENFELD, J., concur.