The People of the State of Illinois, Plaintiff-Appellee, *v.* Leonard Petitjean, Defendant-Appellant.

(No. 71-247;

Second District—August 30, 1972.

Robert L. Sklodowski, of McLennon, Sklodowski, Nelson & White Assoc., of Park Ridge, for appellant.

William V. Hopf, State's Attorney, of Wheaton, (Malcolm F. Smith, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant was tried under two counts of an indictment, one charging theft by deception [1] and the other theft by exerting unauthorized control,[2] each alleged to involve more than $150. Both offenses were alleged to have occurred on February 17th, 1969.

The court denied a pre-trial motion by the defendant to compel the State to elect between the counts for trial. The jury found defendant guilty on both counts, but as to Count I, found the value of the property to be less than $150. A single sentence of 1-2 years in the penitentiary was imposed.

Defendant contends that there is a fatal variance between the language of Count II and the evidence adduced; that the State failed to prove beyond a reasonable doubt that the value of the property described in Count II exceeded $150; and that the two counts charged separate and unrelated offenses which were not part of the same transaction and should therefore not have been joined for trial. Ill. Rev. Stat. 1967, ch. 38, sec. 111—4(a).

There was evidence that a model home owned by Richard Cottrell was burglarized on February 9th, 1969, and that among the items taken were a Kenmore Washer and Dryer; that defendant offered to sell these items to one Haight in February of 1969 for $75.00 each; that defendant told Haight that a James Tracy had stolen them from a home; that when Haight later inquired, defendant said he had gotten rid of the machines. Lee Hinterlong purchased the machines from defendant on February 17th, 1969, for $225, approximately $100 of which was a previous debt owed to defendant by Hinterlong.

---

[1] Count I included the allegation that defendant "committed the offense of THEFT in that he did knowingly by deception obtain unauthorized control over certain property, being $225.00, by representing to and creating in Lee Hinterlong an impression that said defendant had full authority to sell to Lee Hinterlong, a Kenmore Washer and Kenmore Gas Dryer, which impression was false, in that said Washer and Dryer were stolen and the defendant knew said Washer and Dryer were stolen * * *."

[2] Count II included the allegations that defendant "committed the offense of THEFT in that he did knowingly exert unauthorized control over a Kenmore Washer and Kenmore Gas Dryer, * * *."

A detective testified that in July of 1969, defendant admitted that he knew the items were stolen at the time he sold them, but had no part in the burglary and was contacted by Tracy later. The officer's written report contained no reference to this admission. Tracy testified that defendant accompanied him when he took the machines from the Cottrell home. Defendant testified that he did not know the items were stolen until after the sale to Hinterlong and that he then offered to return the money. Hinterlong denied the conversation related by the defendant. Defendant further denied that he had made the admissions testified to by the officer or by Haight.

■■ The contention that there is a variance is based upon defendant's premise that Count II charges defendant with theft by the actual taking of the property, but that the proof at most, sustains a charge of receiving stolen property. The record does not support defendant's claim that he was being tried for the original taking of the washer or dryer or that he was so charged in Count II. Rather, defendant was charged with theft by knowingly exerting unlawful control over the property on February 17th, the date of the sale; and the proof established the offense. The record clearly shows that the State proceeded at all times on the theory, in Count II, that defendant knowingly exerted unauthorized control over the washer and dryer on February 17th when he sold them to Hinterlong.

■■ Theft under Ill. Rev. Stat. 1967, ch. 38, sec. 16—1(a)(1), under which defendant was charged in Count II, "is not limited to the theft of property in which only the actor who initiates the wrongful asportation is guilty of the offense" (*People v. Nunn* (1965), 63 Ill.App.2d 465, 470, cited with approval in *People v. Marino* (1970), 44 Ill.2d 562, 576), but includes the wrongful sale or conveyance of the property. (*People v. Nunn, supra,* at page 471.) See also S.H.A., ch. 38, § 16—1, Committee Comments.

■■ The proof was also sufficient to establish that the fair cash market value of the washer and dryer described in Count II exceeded $150 at the time and place of the theft.

The manager of the appliance section of Sears in Elmhurst, in the general area of the theft, testified that he had sold Kenmore Washers and Dryers for more than 22 years. Although he did not examine the particular machines, he said that the retail value of a Kenmore Washer and Dryer would have been $475 new and that they were worth $260 in February, 1969, if they were in good condition. If in poor condition, he said, they would be worth $100 to $150, but would have to be thoroughly run down to be worth less than $150. Under questioning, it became clear that he was taking into account the factors which made

up fair cash market value in stating his opinion. The value, if the transmission in the washer was faulty (as Hinterlong claimed he had transmission trouble on the washer some unspecified time after he acquired the machines) would be reduced by the $100 repair cost to a total of $160. However, there was testimony by the owner, Cottrell, that he knew the machines were "in very good shape" in January of 1969 except for minor scratches, since they had been checked out by a Sears service man some six months prior to the theft, and had not been used in the interval. Hinterlong testified that the machines looked like new and that defendant told him the machines were "like new". Defendant objected to the competency of the expert witness, but we find no merit in this objection. There was no other objection made to the valuation testimony, nor contrary evidence of value.

The totality of the proof as to value, given without objection, was sufficient to support beyond a reasonable doubt the jury's finding that the fair cash market value of the washer and dryer at the time of the theft by exerting unauthorized control was in excess of $150. *People v. Harden* (1969), 42 Ill.2d 301, 305, 306; *People v. Rose* (1960), 19 Ill.2d 292, 295; *People v. Dell* (1966), 77 Ill.App.2d 318, 325; *cert.* den. 389 U.S. 826.

■■ We also conclude that the court correctly ruled that the two counts could properly be joined for trial. Separate offenses were charged in each count but the offenses were based upon acts which we consider part of the same comprehensive transaction within the provisions of ch. 38, sec. 111—4(a), *supra.*

The sale of Cottrell's property to Hinterlong was the act common to both Count I (theft by deception) and Count II (theft by exertion of unauthorized control). While the proof did not establish the exact date the machines came into defendant's control, the State could properly fix February 17th, 1969, the date on which the sale to Hinterlong took place, as the date on which defendant deceived the purchaser and likewise the date on which he exerted unauthorized control intending to deprive the owner permanently of the use of the property. Thus the same act, the sale, was a common element of proof of both offenses charged. This was sufficient to bring both counts within the same comprehensive transaction, allowing the different offenses with different victims to be tried together. (*People v. Bernstein* (1911), 250 Ill. 63, 64. See also *People v. Stingley* (1953), 414 Ill. 398, 401-402.) *People v. Wolf* (1934), 358 Ill. 334, cited by defendant, is distinguishable on its facts. There, an election was required because Wolf was charged with two different types of embezzlement with differing penalties while acting in two different

capacities. (See *People v. O'Malley* (1949), 404 Ill. 165, 171.) Here, the sale to Hinterlong by the defendant acting in his personal capacity constituted theft by deception from the purchaser as well as the exertion of unlawful control over Cotrell's property with the intent to deprive the owner permanently.

The judgment is affirmed.

Judgment affirmed.

GUILD and T. MORAN, JJ., concur.