THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MORRIS HOOKER, Defendant-Appellant.

First District (5th Division)   No. 76-1721

Opinion filed October 7, 1977.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant, Morris Hooker, was indicted for the armed robbery of Stephen Polcyn. (Ill. Rev. Stat. 1973, ch. 38, par. 18—2.) Following a jury

trial he was found guilty and sentenced to a term of imprisonment of 6 to 20 years. On appeal defendant contends that: (1) he was denied a fair trial because of questions and comments by the prosecutor concerning defendant's post-arrest silence; (2) the trial court improperly refused to instruct the jury on the offense of theft; (3) the trial court erred in refusing to answer a question posed by the jury concerning an instruction; (4) defendant was prejudiced by the fact that the jury was inadvertently given a set of instructions containing designations of the proposing party and other extraneous markings; and (5) defendant's maximum sentence is excessive, as compared to the maximum sentences of 18 years imposed on him at the same hearing for similar offenses following pleas of guilty.

A full recitation of the evidence is unnecessary because we have concluded that defendant's conviction must be reversed, and this case remanded for a new trial. (*People v. Monaghan* (1976), 40 Ill. App. 3d 322, 352 N.E.2d 295.) Defendant testified and admitted at trial that on April 30, 1974, he and two other men, Martin Berry and Candido Laureano, went to the Arthur Treacher's Fish and Chips store on Addison Street, displayed a handgun, announced a holdup, forced one employee into a cooler, and took cash from the assistant manager, Stephen Polcyn. The State's witnesses testified to substantially the same sequence of events. While the participants were still inside, police surrounded the store. Polcyn unlocked the front door to allow the police to enter.

Defendant additionally testified that Laureano was also an employee of the Addison Street Arthur Treacher's store. Prior to the incident Laureano told him that Polcyn had "arranged a setup" whereby the armed robbery would merely constitute a theft. According to the plan Polcyn had arranged for defendant and his two cohorts to enter the store, "stick it up, and leave." The gun was brought in case someone else was present in the store. Defendant stated that when the police arrived he said, "I guess we'll have to give up," to which Polcyn replied, "well, we got to." Defendant further stated that the gun only fired pellets, which he did not have during the incident, and that the gun was incapable of firing on the day of the offense.

On cross-examination defendant admitted that he was a former employee of Arthur Treacher's and had been fired four months prior to the instant occurrence. He also admitted that earlier on the evening of April 30, 1974, he, Berry and Laureano had robbed another Arthur Treacher's store on Milwaukee Avenue.

Laura Reich testified in rebuttal for the State that on April 21, 1974, nine days before the instant offense, defendant and one cohort robbed at gunpoint an Arthur Treacher's store on Central Avenue. Also, in rebuttal, Stephen Polcyn testified that he did not know Laureano until after the

April 30 incident, and he did not plan with Laureano to steal money from the Addison Street Arthur Treacher's store.

OPINION

Defendant contends initially that he was denied a fair trial by the prosecution's erroneous inquiry into his failure to raise at any time before trial his claim that the crime was a "setup" by Polcyn and Laureano. Defendant argues that such inquiry, along with closing commentary by the prosecutor, violated his constitutional right to avoid self-incrimination.

The complained of exchange took place during cross-examination of defendant and occurred as follows:

"Q. Did you talk to any of the police officers that night?

A. No, sir.

Q. You didn't tell them it was a setup and you weren't involved.?

A. No, sir.

Q. Did you tell—you were at the preliminary hearing in this case, right?

A. Yes, sir.

Q. Did you testify at the preliminary hearing it was a setup?

Mr. Harris [defense counsel]: Objection.

The Court: Objection sustained.

Mr. Harris: Ask that it be stricken.

The Court: May be stricken.

Mr. McGann [prosecutor]: Q. So the first time that you are telling anyone other than your lawyers that this was all a setup and a joke is here in court to these ladies and gentlemen of the jury?

The Court: Overruled.

Mr. Harris: As to characterization of the joke, Judge.

The Court: That will be sustained.

Mr. McGann: Q. So, the first time that you are telling anybody other than your lawyers that this was a setup, that this was a conspiracy between Laureano and Polcyn is when you are telling it to these ladies and gentlemen of the jury, correct?

A. Yes, sir."

In addition, during closing arguments the prosecutor commented on defendant's silence as follows:

"* * * why [sic] tell the police, when he got to the police station, that it was a set-up. Why didn't he say that? Because he thought it up after he saw Steve Polcyn again * * *

Mr. Murphy [defense counsel]: Objection.

The Court: Objection overruled."

We agree with defendant that such questions and commentary

were improper and require reversal and remandment of the instant cause.

■■■ The United States Supreme Court has determined that the post-arrest silence of an accused may not be used for impeachment purposes. (*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; see also *United States v. Hale* (1975), 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133.)' Under such circumstances the accused's "failure to offer an explanation * * * can as easily be taken to indicate reliance on the right to remain silent as to support an inference that the explanatory testimony was a later fabrication." (*United States v. Hale*, 422 U.S. 171, 177, 45 L. Ed. 2d 99, 105, 99 S. Ct. 2133, 2137.) In the instant case the prosecution's cross-examination and closing commentary concerning defendant's failure to previously set forth his story of a "setup" is a clear violation of due process under *Doyle* and *Hale*.

■■ The State contends that defendant has not preserved this issue for review. This court, however, has consistently recognized a *Doyle* violation as plain error. (*People v. Suggs* (1977), 50 Ill. App. 3d 778, 365 N.E.2d 1118; *People v. Deberry* (1977), 46 Ill. App. 3d 719, 361 N.E.2d 632; *People v. Monaghan* (1976), 40 Ill. App. 3d 322, 352 N.E.2d 295; see also *People v. Kennedy* (1975), 33 Ill. App. 3d 857, 338 N.E.2d 414.) Thus, in the instant case the prosecutor's actions regarding defendant's post-arrest silence constitute plain error. The question before this court, therefore, is whether such error, in the circumstances of this case, can be considered harmless.

Violation of a constitutional right does not require reversal where that error is harmless. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) However, in order for an error involving the denial of a Federal constitutional right to be held harmless in a criminal case, the reviewing court must be satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction. (*People v. Brady* (1973), 14 Ill. App. 3d 830, 303 N.E.2d 528; *People v. Garnes* (1973), 12 Ill. App. 3d 210, 298 N.E.2d 399.) We are not so convinced in the case at bar.

While there may well have been sufficient other evidence upon which the jury could properly reject defendant's story, we are unable to say beyond a reasonable doubt that the improper testimony and closing argument concerning defendant's silence did not contribute to the instant verdict. The clear implication that defendant's story was a recent fabrication was there for the jury to draw. Indeed, the prosecutor in closing argument drew the inference himself and stated it to the jury.

■■ The State emphasizes in its brief the imperfections of defendant's story as well as the rebuttal testimony of Ms. Reich and Polcyn. None of this other evidence, however, establishes that the defense was a recent fabrication. Only evidence of defendant's post-arrest silence implies this.

Once the option of disbelieving defendant's theory of defense on the basis of recent fabrication was presented to the jury, there can be no assurance that the jury rejected the defense solely on its merits. Thus, we must find that the *Doyle* violation in the instant case constitutes reversible, rather than harmless, error. As the Supreme Court noted in *United States v. Hale* (1976), 422 U.S. 171, 180, 45 L. Ed. 2d 99, 107, 95 S. Ct. 2133, 2138:

> "Not only is evidence of silence at the time of arrest generally not very probative of a defendant's credibility, but it also has a significant potential for prejudice. The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted."

We cannot say beyond a reasonable doubt that such prejudice did not occur in the instant case.

In view of the foregoing determination, we need consider further only those two additional allegations of trial error which might recur upon retrial of this cause.

Initially, we turn to defendant's contention that the trial court improperly refused to instruct the jury on the offense of theft. Defense counsel submitted a number of proposed theft instructions to the trial court, in pursuit of defendant's theory that Polcyn had participated in the offense against Arthur Treacher's. The court refused the instructions on the basis that the indictment and facts in this case would not support a conviction for the lesser included offense of theft.

■■ It is well settled that where there is evidence in the record which, if believed by the jury, would reduce the crime to a lesser included offense, an instruction defining the lesser offense should be given. (*People v. Bembroy* (1972), 4 Ill. App. 3d 522, 281 N.E.2d 389.) However, it is also the rule that the refusal to give such an instruction is not error where all the evidence adduced indicates that the jury would only be justified in returning a verdict of guilty or not guilty of the crime charged. (*People v. Bembroy.*) The instant case falls within the latter rule, and thus we conclude that the trial court properly refused the requested theft instructions.

■■ A person commits theft when he knowingly obtains or exerts unauthorized control over the property of the owner with the intent to permanently deprive him of the use or benefit of the property. (Ill. Rev. Stat. 1973, ch. 38, par. 16—1.) Ownership of the property allegedly stolen, therefore, is a necessary averment of an indictment for theft. (*People v. Berndt* (1968), 101 Ill. App. 2d 29, 242 N.E.2d 273; *People v. Hill* (1966), 68 Ill. App. 2d 369, 216 N.E.2d 212.) However, specific ownership of the stolen property in the person named in the indictment is not necessary, so long as it is shown that he has some possessory interest in the property at the time of the offense. *People v. Dell* (1966), 77 Ill. App. 2d 318, 222

N.E.2d 357, *cert. denied* (1967), 389 U.S. 826, 19 L. Ed. 2d 81, 88 S. Ct. 73; see also *People v. Tucker* (1976), 35 Ill. App. 3d 630, 342 N.E.2d 395; Ill. Rev. Stat. 1973, ch. 38, par. 15—2.

■■ In the instant case Polcyn was the sole named victim of the armed robbery. Certainly, Polcyn had a possessory interest in the stolen money superior to defendant's at the time of the offense. Therefore, for purposes of the theft statute, Polcyn would qualify as the "owner" of the stolen property (see *People v. Tucker*), and theft from Polcyn would be a lesser included offense of the charged crime of armed robbery from Polcyn. (See Ill. Rev. Stat. 1973, ch. 38, par. 2—9; *People v. Beck* (1976), 42 Ill. App. 3d 923, 356 N.E.2d 848.) However, as defendant concedes, there are no facts in the case which would support a conviction for theft from Polcyn. If the jury believed that Polcyn aided in the offense, then they would have to acquit defendant of the charged crime and any lesser included offense.

■■ Defendant contends, however, that the lesser included offense of theft from Arthur Treacher's justifies the requested instructions. We disagree. The indictment in this case would not support a finding of guilt for such an offense. Polcyn was the only named victim. Theft from Treacher's is not a lesser included offense of the charged armed robbery of Polcyn. The element of Treacher's "ownership" of the stolen money, which would be necessary to a theft conviction, is not necessary to nor included in the armed robbery of the named person, Stephen Polcyn. Thus, since it would be possible to commit the armed robbery offense against Polcyn without committing the theft offense against Treacher's, the latter is not a lesser included offense of the former. (See *People v. Delk* (1976), 36 Ill. App. 3d 1027, 345 N.E.2d 197; Ill. Rev. Stat. 1973, ch. 38, par. 2—9.) We therefore conclude that the trial court did not err in refusing the requested instructions regarding theft from Arthur Treacher's.

Defendant also alleges that the trial court erred in refusing to answer a question posed by the jury. We disagree.

During its deliberations the jury sent the following written question to the court:

> "Parameters of definition of 'imminent use of force'—'armed robbery' could that be done with a toy gun?—a stick? Is the expectation of 'imminent use of force' in the mind of the victim pertinent as proof of the dangerousness of the weapon[?]"

Upon inquiry by the court, both sides agreed that the court could not answer the question since it concerned a matter of fact for the jury's own determination. The trial court then ordered that the jury be brought out, and addressed the jurors as follows:

> "The Court: After receiving your question, I have discussed this

matter with both counsel, or counsel for both sides in this case, and I can respond to you only as follows.

I cannot answer the question that you have directed to me, other than to tell you that you have before you all of the instructions that have been submitted in this case to you, and will be submitted to you, in answer to that question.

You must rely on those instructions and upon your memories as to the facts presented in this case.

I am sorry that I cannot instruct you further as to this matter.

So, you will return to the jury room and continue your deliberations under those circumstances.

Jury Foreman: These wholly semantic problems, then, we have to resolve ourselves, rather than merely those of fact?

The Court: Right. I'm sorry, but as I indicated to you, I cannot instruct you further under the law in that situation.

Jury Foreman: We feared that, but we thought we'd try, sir.

The Court: Okay."

The jury was then excused to continue its deliberations.

■■ Based on this record, we must reject defendant's contention that the court failed to recognize its discretion to answer the question posed by the jury. (See *People v. Autman* (1974), 58 Ill. 2d 171, 317 N.E.2d 570; *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166.) The court clearly recognized that it had the discretion to answer the jury's question, and it exercised that discretion by not responding with additional instructions. This was proper since, under the circumstances in this case, the question of whether the weapon used in an armed robbery was dangerous is one of fact for the jury to decide. *People v. Trice* (1970), 127 Ill. App. 2d 310, 262 N.E.2d 276.

A similar situation was present in the recent case of *People v. Charles* (1977), 46 Ill. App. 3d 485, 360 N.E.2d 1214, wherein the jury questioned the court concerning the element of taking money "from the person or in the presence of" the victim. The trial court in *Charles* refused to comment upon the inquiry, and this court on review upheld such exercise of discretion, stating:

"We believe any more specific answer or explanation of the trial judge would probably have directed a verdict of guilty. The instructions were clear and in common language which the jury could understand. The trial court properly exercised its discretion by not giving additional instructions under the circumstances of this case." (46 Ill. App. 3d 485, 489, 360 N.E.2d 1214, 1217.)

A similar conclusion is appropriate in the instant case.

■■ In addition, we note that defense counsel agreed with the prosecutor's advice to the court at the time the question was asked, that the court should not respond since the question went to a matter of fact.

Under such circumstances defendant may not now complain that the court erred in exercising its discretion by refusing to give additional instructions to the jury. See *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.

For the aforementioned reason, the conviction and judgment appealed from are reversed and this cause is remanded to the circuit court of Cook County for a new trial.

Reversed and remanded.

SULLIVAN, P. J., and WILSON, J., concur.