THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GEORGE STACK, Defendant-Appellant.

Fifth District   No. 78-86

Opinion filed May 8, 1979.

Paul Riley, of Mudge, Riley & Lucco, of Edwardsville, for appellant.

Patrick J. Hitpas, State's Attorney, of Carlyle (Raymond F. Buckley, Jr., and Stephen J. Maassen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

A jury in the circuit court of Clinton County found the defendant, George Stack, guilty of burglary, and he was sentenced to a term of imprisonment of not less than four years nor more than 12 years. The defendant asserts the following issues on appeal: (1) whether it was error for the prosecutor to comment during closing argument on the defendant's post-arrest silence; (2) whether the trial court erred in admitting an oral statement where the defendant was furnished with an incomplete discovery list of the persons present when the statement was made, and where the prosecutor had knowledge of all the people present when the discovery request was made; (3) whether the trial court erred in

admitting into evidence a form containing *Miranda* warnings which was initialled and signed by the defendant; (4) whether the trial court erred by improperly commenting on evidence when it ruled on an objection; (5) whether the trial court erred in refusing to instruct the jury with respect to accomplices and accountability after the State argued an accomplice theory of guilt; and (6) whether the evidence at trial failed to support the defendant's guilt beyond a reasonable doubt.

The defendant and Jack Henry were jointly charged with burglary pursuant to section 19—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 19—1(a)). The pertinent facts pertaining to the burglary are as follows.

On June 27, 1977, at approximately 1 p.m., Ralph Langhauser and August Haislar, employees of the Clinton County Oil Company, returned from their lunch breaks. While standing in the company parking lot Langhauser noticed two men, subsequently identified as the defendant and Henry, and a red pickup truck near the tire loading area. He testified that he saw Henry hoist a tire into the truck. Langhauser's suspicion was aroused because no salesmen were assisting in the loading operation. It was normal company policy for a salesman to accompany a customer to the garage area whenever tires were being loaded after a sale.

Langhauser directed Haislar's attention to the presence of the defendant and Henry near the garage. Langhauser then proceeded to the office to ascertain whether any tires had been sold to the men. After finding out that none were sold, he called the police.

Haislar testified that when he first glanced at the pickup truck he saw the defendant and Henry loading tires. He, too, was suspicious because the loading was being carried out during the lunch hour in the absence of any authorized personnel. Haislar testified that the men started to rush when they saw him approach their truck. They threw one more tire into the truck and then climbed in the cab and started to pull away. When only two feet away from the driver's side of the truck, Haislar asked Henry, the driver, whether he needed assistance. Henry responded affirmatively, but continued to pull away. In his haste he backed the truck into the side of the garage and then sped away. Haislar also noted that the two men appeared nervous when he approached.

Haislar took down the license number of the truck and reported it to the police. A red pickup truck bearing that license number and containing the defendant and Henry was stopped a short while later by the police. Four of the tires found in the back of the truck were identified by Haislar and Langhauser as belonging to the Clinton County Oil Company.

Neither Haislar nor Langhauser testified that they saw the defendant or Henry enter the garage where the tires were stored. Also, they were

unable to testify that the garage door was closed before they went on their lunch breaks.

The defendant testified that he never intended to steal any tires from the company. Although admitting on the stand that he helped load the stolen tires, he maintained that he acted only as an innocent bystander. Specifically, he claimed that he was in the employ of Henry at the time of the burglary, and that he never suspected that Henry was procuring the merchandise illegally. However, the defendant could produce no payroll stubs, cancelled checks or other evidence corroborating his claim that he was working for Henry.

The first issue the defendant raises on appeal is whether the prosecutor improperly commented upon the defendant's post-arrest silence.

The prosecutor attempted to rebut the defendant's innocent-by-stander-employee defense by stating in closing argument:

> "Why is this the first time we ever heard this version of the story about an hour ago? Never told anyone this before. This is the first we have ever heard this version because the case was so strong that there was just very little else to do."

■■■ The defendant relies on *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, in contending that these remarks to the jury constituted improper prosecutorial comment upon post-arrest silence. We agree. However, there was no objection interposed when these remarks were made, nor was the issue adequately raised in the defendant's post-trial motion. Nevertheless, we find that this issue is not waived because such comment constitutes plain error. (*People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 272; *People v. Suggs* (1st Dist. 1977), 50 Ill. App. 3d 778, 365 N.E.2d 1118.) Accordingly, the question becomes whether the error was harmless or reversible.

■■ In *Beller*, the supreme court noted two exceptions to the *Doyle* rule prohibiting prosecutorial comment on the post-arrest silence of the accused. The first exception occurs where a defendant offers an exculpatory version of events and informs the jury that he had communicated the same story to the police. Comment about his post-arrest silence is permissible in this instance only if the prosecutor does so for the purpose of impeaching the defendant's post-arrest behavior by demonstrating that no such story was ever relayed to the police prior to his testimony. The second exception occurs where the testimony of a defendant is factually inconsistent with a prior statement made by him. A prosecutor may refer to a defendant's post-arrest silence as long as the reference is made in the context of impeaching the defendant's testimony through a prior inconsistent statement. The court went on to explain

factual inconsistency by saying that facts were inconsistent only where they directly contradicted a defendant's testimony, and not where they were merely susceptible to a contradictory interpretation. Finally, it is significant to note that under both exceptions impeachment of a defendant's exculpatory testimony could not be achieved by focusing solely upon post-arrest silence.

In the present case the defendant never told the jury that he presented his innocent-bystander-employee defense to the police prior to trial. Consequently, the prosecutor had no foundation upon which to impeach the defendant on the basis of inconsistent post-arrest behavior, because his post-arrest silence was not inconsistent with his testimony. Therefore, the first exception does not apply to this case.

The defendant made no written statements to the police, but he did make an oral statement in which he claimed that Henry drove the truck. This prior statement was not inconsistent with his innocent-bystander-employee defense, and thus could not serve as a proper foundation for impeachment by a prior inconsistent statement.

A closer question is presented by a statement attributed to the defendant by Bill Ross, a captain in the Clinton County Sheriff's Department at the time the events of this case transpired. Ross testified that he overheard the defendant tell Henry that they could both beat the case on a technicality, because the garage doors were open and burglary required breaking into a building. Although this statement may have connoted guilt on the part of the defendant, it could not conclusively establish guilt. Therefore, it did not directly contradict the defendant's claim of innocence. Innocent as well as guilty persons have had charges against them dropped due to "technicalities." Thus the remark about beating the case on a technicality was not a proper foundation for impeachment by a prior inconsistent statement. Accordingly, the second exception does not apply to either of the oral statements attributed to the defendant. For the foregoing reasons, we hold that the prosecutor's remarks concerning the defendant's post-arrest silence constituted error under *Doyle*.

■ Having found error, we must determine whether such error was reversible, as the defendant asserts, or merely harmless. The violation of a constitutional right does not necessitate reversal where the error is shown to be harmless beyond a reasonable doubt (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824), and the error should be considered harmless if the reviewing court can say beyond a reasonable doubt that the error did not contribute to the verdict. *People v. Landgham* (1st Dist. 1970), 122 Ill. App. 2d 9, 257 N.E.2d 484.

In his own defense the defendant testified that he never intended to steal any tires. He admitted that he assisted Henry in loading the tires; nevertheless, he contended that he did not know at the time that Henry

lacked authorization to take the tires. Therefore, the only question of fact presented to the jury in this case was whether the defendant had the requisite intent to commit burglary. Our inquiry as to the quality of the *Doyle* violation consequently focuses upon the jury impact that the prosecutor's post-arrest silence remarks had on the defendant's claim that he never intended to commit burglary as manifested by his innocent-bystander-employee defense.

Unlike *People v. Hooker* (1st Dist. 1977), 54 Ill. App. 3d 53, 369 N.E.2d 147, a case in which prosecutorial comment on post-arrest silence was deemed reversible error because the only indication that the defendant's testimony was a recent fabrication came from the improper comment, the record in this case reveals other competent evidence with which to attack the credibility of the defendant's innocent-bystander-employee defense.

Haislar testified that after the defendant and Henry had spotted him approaching their truck, they ceased loading tires, scrambled into the truck and prepared to leave. Henry, however, had backed the vehicle into the garage allowing Haislar to get as close as two feet from the truck. Haislar stated that both occupants of the truck appeared nervous.

This hurried, nervous behavior on the defendant's part certainly belied his defense that he was an unwitting participant in the burglary. It is significant to note that when he took the stand he made no attempt to deny or explain Haislar's testimony about his behavior. Furthermore, the defendant was unable to produce written evidence, such as paychecks, payroll stubs, or any other evidence or witnesses to corroborate his claim that he worked for Henry.

On the basis of the record before us, we hold beyond a reasonable doubt that the evidence so overwhelmingly attacked the credibility of the defendant's innocent-bystander-employee defense that the improper comment on post-arrest silence did not contribute toward the verdict. Accordingly, we hold that the error was harmless.

This holding is fortified by our supreme court's decision in *People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272. In that case the defendant was charged with burglary, and on the basis of his exculpatory statements the only issue before the jury was whether he had the requisite intent to commit burglary. The defendant testified that he had entered a house, but only for the purpose of securing shelter for members of his family who were locked out of a motel for failure to pay rent. However, the manager at the motel testified that the defendant's family members were never locked out and that the defendant had in fact paid his rent. In closing argument the prosecutor commented that if the defendant's story about seeking shelter was true, then why did he not tell the police about this when he was arrested. The supreme court held that the prosecutor's comment about the defendant's post-arrest silence was plain error under

*Doyle v. Ohio.* Nevertheless, the court held that the error was harmless in view of the testimony of the motel manager which thoroughly discredited the defendant's explanation of his presence in the house.

■■ The second issue the defendant asserts on appeal is whether the trial court erred in admitting testimony about an oral statement the defendant allegedly made since he was supplied with an incomplete discovery list of the persons present when the statement was made. Specifically, he objects to the testimony of Bill Ross in which Ross stated that he overheard the defendant tell Henry that they could beat the burglary charge on a technicality. The defendant contends that the defendant's remarks were equivalent to a confession or admission. Thus he argues that the State should have supplied him with a list of the names of all persons present when the remarks were made pursuant to section 114—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—10). We need not consider whether these remarks constituted a confession for purposes of section 114—10, because the defendant's failure to object to Ross' testimony waived any error with respect to this section. *People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771.

■ The third issue for our consideration is whether the trial court erred in admitting into evidence a form containing *Miranda* warnings which was initialled and signed by the defendant. We hold that this issue is waived on appeal due to the defendant's failure to raise this question in his post-trial motion. *People v. Neafus* (5th Dist. 1976), 39 Ill. App. 3d 365, 353 N.E.2d 68; *People v. McClellan* (1st Dist. 1975), 29 Ill. App. 3d 712, 331 N.E.2d 292.

The fourth issue raised on appeal is whether the trial court improperly commented upon evidence when it ruled on an objection. The defendant points to the following exchange in support of his contention that the trial court improperly projected its own view of the evidence before the jury.

> "STATE: Did you make that statement with regard to technicalities and beating it on a technicality?
>
> MR. RILEY: Objection, Your Honor.
>
> THE COURT: Well, he's asked that question and he's answered that. Now I think it would become repetitious. He admitted that. Let's move on Mr. Hitpas."

At trial the defendant maintained that he used the word "you" when he mentioned to Henry about beating the case on a technicality; while the testimony of Bill Ross indicated he used the word "we." The defendant contends that by saying, "He's admitted that," the trial judge endorsed in open court the State's prejudicial version of the statement.

■ However, this issue has also been waived on appeal, because the defendant neither objected to the trial judge's remarks nor raised this issue in his post-trial motion.

Even if we considered the matter on its merits it is apparent from the relevant portions of the trial transcript that the court was merely explaining its ruling in sustaining the defendant's objection to repetitious questioning by the prosecutor. The prosecutor was asking if the defendant made a statement about beating the case on a technicality. The trial court's remark was only directed to the fact that the defendant had already admitted that he made a statement concerning beating the charge on a technicality, and the court was not implying to the jury that the defendant used the word "we" instead of "you" when he made that statement.

The fifth issue asserted on appeal is whether the trial court erred in refusing to instruct the jury with respect to accomplices and accountability after the State pursued an accountability theory of guilt. The defendant tendered IPI Criminal No. 3.05 which stated:

"You should give separate consideration to each defendant. Each is entitled to have his case decided on the evidence and the law which is applicable to him.

Any evidence which was limited to one defendant should not be considered by you as to any other defendant."

This instruction was refused by the trial court on the ground that the instruction was customarily given where two or more defendants were on trial at the same time. In this case the defendant was tried alone because codefendant Henry failed to appear for trial. The defendant contends that fairness necessitated giving this instruction to the jury, due to the prosecutor's constant references to the conduct of Henry in the case against the defendant.

Under the facts of this case the trial court's refusal of IPI Criminal No. 3.05 did not constitute error.

■■ The purpose of this instruction, as manifested by the language in its second paragraph, is to prevent jurors from applying evidence against one codefendant where that evidence pertained only to a different codefendant. However, the evidence establishing Henry's participation in the burglary applied to defendant as well. The testimony of the State's witnesses and of the defendant established that the seizure of the tires was a joint venture between the defendant and Henry. The other evidence at trial consisted of the defendant's innocent-bystander-employee defense which was offered for the purpose of negating the element of intent to commit burglary. Therefore, since the jury was never confronted with evidence that was solely limited to Henry which it could mistakenly apply to the defendant, it was unnecessary to instruct the jury with IPI Criminal No. 3.05.

The final issue we must deal with is whether the evidence at trial failed to establish the defendant's guilt beyond a reasonable doubt. Relying on the defendant's exculpatory testimony and the fact that Henry

drove the pickup truck, the defendant contends that there is no probative evidence in the record to support beyond a reasonable doubt that he solicited, aided, abetted, agreed or attempted to aid Henry in the commission of burglary nor that he had the requisite intent to commit burglary. We find no merit in this contention.

By the defendant's own innocent-bystander-employee defense he admitted that he helped seize the tires. Therefore, only the element of intent to commit theft remained to be proved before a conviction could be secured for burglary.

The State sought to prove this intent by evidence showing that neither the defendant nor Henry had authorization to take the tires. Dale Wade, secretary-treasurer of the Clinton County Oil Company, testified that both men had no permission to be on the company premises or to remove tires. Furthermore, he added that no tires were sold to the men. Haislar and Langhauser were able to identify the tires found in the pickup truck minutes after the theft as belonging to the Clinton County Oil Company.

In the face of this testimony that the seizure was unauthorized, the defendant countered with his innocent-bystander-employee theory in which he claimed that he did not know that he had no authority to take the tires. However, the record contains testimony which overwhelmingly attacked this theory's credibility. Besides his own exculpatory testimony, the defendant could produce no other evidence, written or oral with which to corroborate his claim that he was in the employ of Henry. Also, the rapid, nervous movement of the defendant after he was spotted by Haislar at the garage supports the State's theory that he knew he lacked any authorization to take the tires. It is important to note that he never denied or explained this behavior when he took the stand in his own defense.

We are satisfied on the basis of the record before us that guilt was established beyond a reasonable doubt. For the foregoing reasons we affirm the defendant's conviction of burglary.

Affirmed.

MORAN, P. J., and KARNS, J., concur.