THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH HARRIS, Defendant-Appellant.

First District (5th Division)   No. 85—0464

Opinion filed September 19, 1986.

892

PINCHAM, J., dissenting.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mary Ellen Dienes, and Steven J. Zick, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial defendant, Kenneth Harris, was convicted of home invasion, aggravated battery, robbery, and rape in connection with an attack on 79-year-old I.B. He was also convicted of home invasion, aggravated battery, and robbery in connection with an attack on 93-year-old B.G. Defendant received sentences of 5 years for the aggravated-battery convictions, 7 years for the robbery convictions, and extended-term sentences of 60 years for the home invasion and rape of I.B., all to be served concurrently. An extended-term sentence of 60 years for the remaining home-invasion conviction was made consecutive to the latter two 60-year sentences.

On appeal defendant contends (1) he was denied a fair trial by the joinder of separate charges in a single trial, and (2) the imposition of consecutive 60-year extended-term sentences was an abuse of discretion.

We affirm.

The following pertinent testimony was adduced at trial. I.B. was, on January 16, 1984, a 79-year-old tenant living on the second floor of a building at 678 North Dearborn in Chicago. At about 5:30 p.m. that

day, while getting her mail in the first-floor vestibule of the building, she saw a man, identified by her in court as the defendant, enter the building. Back on the second floor she again saw the defendant. When she ran for her open door he grabbed her from behind by the neck and carried her into the apartment. The defendant demanded money from I.B., taking from her a purse containing $25. He threatened to kill her, choked her, and demanded more money and her diamonds. When she tried to escape he dragged her back, throwing her headfirst to the floor. He then tore off her clothes and had forcible sexual intercourse with her. After that act he asked her how old she was. I.B. lost consciousness. When she came to she was bleeding from her head. She crawled out of the apartment, down the stairs, and out to the street where a tenant came to her aid and called the police. She subsequently identified the defendant from an array of photographs.

B.G., 94 years old at the time of the trial, testified that on January 18, 1984, she was living on the fifth floor of the Croyden Hotel, at 616 North Rush in Chicago. Shortly after midnight that morning, she mailed a letter on the first-floor vestibule. A man, subsequently identified by her as the defendant, got on the elevator with her and got off with her on the fifth floor. When she unlocked her door the defendant grabbed her by the neck from behind and pushed her inside.

The defendant asked her where her jewels were, then took from her person a money bag containing about $500. When B.G. pleaded with defendant not to harm her he said she was too old, that he would not rape her. She was then struck on the jaw, losing consciousness until a neighbor, Jerry Dillon, arrived. Dillon testified that he found B.G. on the floor at 3:15 that afternoon. She was conscious, but incoherent, wearing only a slip. Her clothes were scattered on the floor.

B.G. testified that she could remember nothing more until she found herself in the hospital weeks later. However a police detective testified that on January 21, 1984, he showed B.G. an array of photographs. Because of her injuries she could not then speak but she selected a photograph of defendant and handed it to the detective. He asked if that looked like her attacker, and she nodded her head affirmatively. At trial B.G. was asked if she saw her attacker in the courtroom. She pointed to the defendant, saying, "It looks like that man."

Frankie England testified that she saw the defendant at a tavern some time on the evening of January 17, 1984. He had about $600 in large bills, which he told her he obtained from a lady at the Croyden

Hotel. England admitted that at the time of that incident she was a prostitute and a frequent user of heroin who shared drug expenses with the defendant.

Two Chicago police officers testified that under questioning about these incidents defendant admitted attacking the women. Defendant stated that on January 16, 1984, he followed an older woman into a building on Dearborn just south of Chicago Avenue. He followed her upstairs and grabbed her from behind when she opened her door, forcing her inside. He demanded and received money and then hit the woman several times in the face.

Defendant also told the officers that on January 18, 1984, he followed another woman into the Croyden Hotel. When she opened her door he pushed her inside from behind, holding her by the neck. He struck the woman several times in the face and obtained four or five hundred dollars hidden in the stocking she was wearing. He then forced the woman to disrobe and lie on the bed, purportedly so she would not follow him out.

█ We first consider defendant's contention that the joinder of these charges for trial in a single proceeding was improper. A defendant may be placed on trial in one proceeding for separate offenses if those offenses are part of the same comprehensive transaction. (Ill. Rev. Stat. 1985, ch. 38, par. 111—4(a).) The trial court has substantial discretion in determining the propriety of joinder (*People v. Peterson* (1982), 108 Ill. App. 3d 856, 439 N.E.2d 1103), and its determination will not be reversed absent a showing of abuse of that discretion (*People v. Mikel* (1979), 73 Ill. App. 3d 21, 391 N.E.2d 550).

Among the factors to be considered are: physical and temporal proximity of the acts charged, identity of evidence to be presented, similarities in the acts, and whether there was a common method of operation by the perpetrator. (*People v. Duncan* (1985), 133 Ill. App. 3d 489, 478 N.E.2d 1125.) Thus, in *People v. Tate* (1982), 106 Ill. App. 3d 774, 436 N.E.2d 272, the defendant was charged with home invasion and attempted rape at one location and home invasion and aggravated battery at another location a mile away and one hour later. The reviewing court found that the trial court did not abuse its discretion in denying a motion to sever the charge, noting, *inter alia*, similarities in the method of gaining entry, the method of attack, and the descriptions of the attacker.

█ In this cause the offenses occurred within approximately two blocks and within about 31 hours. In each instance the offender followed elderly women to their apartments, grabbed them around the neck from behind, and forced them into their apartments. Both

women were beaten and robbed of money. Both were asked about jewels. One victim was raped and had all her clothes removed except her stockings. The other was told she was too old to be raped, but when she regained consciousness she was wearing only a slip. Statements made by defendant to the police included admissions relating to both attacks. Of these factors, the physical proximity, the common method of operation, and the common type of victim all support the trial court's determination to grant the State's motion. Although the time period is greater than the one-hour span involved in *Tate*, that factor alone is not dispositive. *People v. White* (1984), 129 Ill. App. 3d 308, 472 N.E.2d 553 (approving joinder of charges relating to acts occurring two and seven months apart).

We do not find the two cases cited by defendant to be controlling or persuasive. In *People v. Bricker* (1974), 23 Ill. App. 3d 394, 319 N.E.2d 255, the defendant allegedly committed the armed robbery of a desk clerk in a Bloomington hotel as well as the armed robbery of a service-station attendant south of Bloomington. The offenses occurred within a three-hour period. However the reviewing court, in finding improper joinder, expressly noted that nothing in the record established a concerted plan of action or scheme linking the two crimes, which were committed several miles apart. In *People v. York* (1975), 29 Ill. App. 3d 113, 329 N.E.2d 845, the defendant was accused of having sexual intercourse with two minor stepdaughters over a period of years. Even though the reviewing court found that the acts charged were of a similar character and constituted parts of a common scheme or plan, the court also found that the acts were not part of the same comprehensive transaction. The *York* court may have been influenced by the fact that one of the victims testified that she was pregnant by the defendant, a fact which the court believed to have been improperly introduced. In any event we find that the facts in this cause clearly established that the two series of offenses were part of a comprehensive transaction so as to permit their joinder for trial.

We also find no merit to defendant's contention that the sentences imposed were excessive. Defendant does not dispute that the Class X felonies of home invasion and rape may statutorily result in extended-term sentences of 60 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2.) Nor does he contend that extended-term sentences may not be imposed consecutively. (*People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.) He contends only that the sentences were an abuse of discretion. Among the factors to be considered as a basis for an extended-term sentence are commission of a felony accompanied

by exceptionally brutal or heinous behavior and commission of a felony against a person 60 years of age or older. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b).) Consecutive sentences may be imposed if the court is of the opinion that such sentences are required to protect the public from further criminal conduct by the defendant. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(b).) Where the offenses were part of a single course of conduct with no change in the criminal objective, one of the offenses must have been a Class X or Class 1 felony and severe bodily injury must have been inflicted. Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4(a).

This 30-year-old defendant had previously served a jail term for attempted murder. His attack on one victim caused her to lose one eye and also broke her jaw. His attack on the other victim broke her jaw and teeth, fractured her ribs, and caused her to have a heart attack. These acts were characterized by the sentencing judge as "revolting, heinous, *** inhuman, depraved." The judge also found that society needed to be protected from the defendant. Given these facts and these findings we find no basis for disturbing the sentences imposed.

Affirmed.

SULLIVAN, P.J., concurring.

JUSTICE PINCHAM, dissenting:

I dissent. Despicable crimes were committed upon two elderly women who were most deserving of society's protection. The horrors took place in their homes, where they were most entitled to safety, security and sanctuary. The crimes were committed against them at night. The offender should be severely punished, but even he, as contemptible as he may be, is entitled to the rule of law which should not have been distorted however strong the temptation to do so may have been. In my judgment, the trial court erred in granting the State's joinder motion and trying the defendant simultaneously for offenses which arose out of two unrelated criminal transactions. Section 111—4 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 111—4(a)) provides:

> "(a) Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense *if the offenses charged,* whether felonies or misdemeanors or both, *are based on the same act,* or on 2 or more acts which *are part of the same comprehensive transaction.*" (Emphasis

added.)

In the case at bar, the offenses that were charged were not *based on two or more related acts which were part of the same comprehensive transaction.*

Indictment number 84 C 923 alleged that the defendant on January 16, 1984, committed the offenses of rape, aggravated battery, home invasion, robbery, kidnaping, aggravated kidnaping, unlawful restraint and residential burglary of I.B. These charges arose out of acts which were committed upon I.B. at about 5:30 p.m. in her second-floor apartment at 678 North Dearborn in Chicago.

The defendant was charged in indictment number 84 C 924 with committing the offenses of robbery, aggravated battery, home invasion, kidnaping, aggravated kidnaping, residential burglary and unlawful restraint upon B.G. on January 18, 1984. These charges arose out of acts which were committed upon B.G. at about 1 a.m. in her fifth-floor apartment at 616 North Rush Street, Chicago.

Although the trial court stated when the indictments came before the court that the State had filed a written motion "to join for consolidated purposes for a trial the two indictments of the People versus Kenneth Harris, 84 C 923 and 84 C 924," the written motion is not in the appeal record. The assistant State's Attorney argued to the trial court in support of the State's motion to consolidate the two indictments for trial:

"It is clear that it is discretionary on the part of the trial court. *** The Sockwell case [*People v. Sockwell* (1977), 55 Ill. App. 3d 174, 371 N.E.2d 100] gives [a] precise test as the margins for determining whether or not separate offenses are part of the same comprehensive transaction ***.

In the Mikel case [*People v. Mikel* (1979), 73 Ill. App. 3d 21, 391 N.E.2d 550], the Court stated in determining whether or not to grant a severance, some factors to be considered are the proximity of times and locations of the various charges, and the identity of the evidence which would be presented to prove each charge.

*** [A]nd substantially [*sic*] the same evidence would have been presented by the State at the trial of each offense.

I think if we apply those bilaterally, Judge, to the evidence which I believe would show at trial here, we have these factors, in case Number 1 it occurred on January 15, 1984 at about 6:40 p.m. in a residential hotel at 678 North Dearborn in the City of Chicago. The case involved an elderly female white woman, age seventy-five, who lived alone.

The second case occurred on January the 18th, 1984 at approximately two a.m. in a residential apartment building at 616 North Rush in the City of Chicago. In that case again the victim is an elderly white female, age eighty four who lived alone.

\* \* \*

In the first case the defendant then proceeded to rape the woman involved. In the second case he said to the woman that he should rape her, but that she is too old.

*In each case the victim describes the defendant to members of the Chicago Police Department. The same police officer as it turns out speaks initially to each woman. The investigation into these offenses was conducted by the same team of detectives.*

The victim identified the defendant based upon a photo array which resulted from their description. *Each identified the defendant from the same array.*

\* \* \*

*[He] confesses to each crime. His confession was made to the same detective and the same Assistant State's Attorney. The evidence would show the same motive involved in each case, to obtain money for narcotics and alcohol which he consumed with a female companion.*

*I think, your honor, that this evidence is so intertwined it would be identical in each separate case.* \* \* \*

I might mention that the arrest in each case was effected after he followed the 73 year old white woman to the 16th floor of the Croyden Hotel, 16 North Wells.

So, for those reasons, Judge, the People would ask that the Court allow the joinder of the two cases before it." (Emphasis added.)

The assistant State's Attorney's factual recitations of the two cases established that the transactions were not *part of the same comprehensive transaction.* The assistant State's Attorney did not urge that they were. Instead, he argued that because the crimes in the two transactions were the same, with the exception of the rape of I.B., because the crimes in the two transactions were somewhat similarly committed, and, as he more emphatically argued, because of the similarity of the State's post-offense and post-arrest investigative evidence, the two indictments should be consolidated for trial. These grounds urged by the assistant State's Attorney should not have been the criteria for determining consolidation and they did not establish that the two transactions were part of the same comprehensive trans-

action.

Preliminarily, it should be noted, contrary to the assistant State's Attorney's argument, that this case does not present a question of the admissibility of evidence of a defendant's criminal transaction for which the defendant is not charged or on trial, to establish such factors as a defendant's knowledge, design, plan, motive, identity, presence, concealment, consciousness of guilt or *modus operandi* for a criminal transaction for which the defendant is charged and on trial. Even then, evidence of collateral crimes to establish such factors has a high risk of prejudice, as the court pointed out in *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.

At the defendant's trial for murder in *Lindgren*, the State presented evidence that within a few hours after the defendant committed the murder, he committed an arson of the residence of his former wife. The court rejected the State's contentions that evidence of the defendant's commission of the arson tended to establish a consciousness of guilt, a concealment motive or the defendant's presence near the murder scene at the approximate time the murder was committed. The court pointed out that the arson was a distinct crime committed at a different place and time. In reversing, the court held:

> "The erroneous admission of evidence of other crimes carries a high risk of prejudice and ordinarily calls for reversal.
> * * *
> There is also the matter of the integrity of the system. A litigant's right to a trial by an unbiased jury is violated where the jury in fact based its decision on extraneous matters. This is a substantial right normally afforded to guilty and innocent defendants alike. Collateral-crimes evidence is likely to violate this right. Therefore, we hold that the defendant deserves a new trial with a jury unbiased with evidence of the arson." *People v. Lindgren* (1980), 79 Ill. 2d 129, 140, 143, 402 N.E.2d 238.

This appeal presents the question of the validity of the consolidation for a single jury trial of criminal offenses which arose out of two distinct criminal transactions. Such a consolidation is permissible only if the two criminal transactions were part of the same comprehensive transaction.

In opposition to the State's consolidation motion the defense attorney argued:

> "The crucial question is whether two or more acts are part of the same comprehensive transaction.
> * * *

I feel that these cases aren't part of the same transaction. It is two separate and distinct charges of two separate and distinct [occurrences]. *** For this reason I feel that they shouldn't be joined. It would be prejudicial to the defendant who is making this objection to the joinder of the hearings. This Court should have these cases tried separately."

A trial court has no discretion to consolidate separate offenses for one trial if the offenses were not part of the same comprehensive transaction. (*People v. Pullum* (1974), 57 Ill. 2d 15, 309 N.E.2d 565.) If the separate offenses were not part of the same comprehensive transaction, the court is not empowered to consolidate the separate offenses for a single trial. The court stated in *People v. White* (1984), 129 Ill. App. 3d 308, 314-15, 472 N.E.2d 553:

"[A] defendant cannot, over his properly made objection, be placed on trial under an indictment charging separate offenses when it affirmatively appears they are not part of one and the same transaction, but are separate and distinct both in law and fact (*People v. Fleming* (1970), 121 Ill. App. 2d 97, 102), nor may a defendant be forced to trial under indictments charging disassociated felonies. (*People v. Benka* (1983), 117 Ill. App. 3d 221, 223; *People v. Woods* (1961), 23 Ill. 2d 471.) *** [J]oinder is not permitted when the charges are unrelated, where the crimes occur several days apart, or where there is no concerted plan of action or scheme that would link the two felonious acts *** ."

When, and only when, the separate offenses are part of the same comprehensive transaction does the trial court have discretion to consolidate the separate offenses for a single trial. In that event, the trial court's discretion is governed by section 114—8 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 114—8), which provides:

"If it appears that a defendant or the State is prejudiced by joinder of related prosecutions or defendants in a single charge or by joinder of separate charges or defendants for trial the court may order separate trials, grant a severance of defendants, or provide any other relief as justice may require."

Thus, the initial question that the trial court was required to resolve was whether the January 16, 1984, 5:30 p.m. rape, robbery and other offenses committed against I.B. at 678 North Dearborn, alleged in indictment 84 C 923, and the January 18, 1984, 2 a.m. robbery and other offenses committed against B.G. at 616 North Rush Street, alleged in indictment 84 C 924, were part of the same comprehensive

transaction. Again, the assistant State's Attorney failed to address this issue in his argument for consolidation. Instead, he argued:

"[W]hat we have here is I think the Court may conclude this as a continuing robbery spree on the part of the defendant during which elderly, old ladies are severely beaten and assaulted, so again, Judge, I would ask that the Court allow the People's motion to consolidate these cases for trial."

The trial court did not determine that the offenses alleged in the two indictments were part of the same comprehensive transaction. Nor did the trial court predicate its decision to grant the State's motion to consolidate on the premise that they were part of the same comprehensive transaction. Instead, the trial court considered and relied on impermissible factors in its decision to consolidate the offenses for trial. The trial court ruled:

"The motion to join for consolidated purposes trial of 84—923 and 924 will be sustained.

The Court has been further listening to what evidence is anticipated to be introduced in support of each of these instant trials. *There is a strong, very strong similarity in the nature of each of the cases, to the common scheme or design and the modus operandi as to, relative to each of the crimes in each of the counts on the separate indictments*, and furthermore that it is a product, *each case is the product of common design and common investigation. This similarity cannot be disassociated*, I think, based upon the motion you stated, and therefore that motion shall be sustained." (Emphasis added.)

A very strong similarity in the nature of each case, common scheme, design, *modus operandi* or common investigation are not the criteria for determining whether two separate criminal transactions can be consolidated for a single trial. (See *People v. Triplett* (1981), 99 Ill. App. 3d 1077, 425 N.E.2d 1236, where the defendant's convictions for the murder and robbery of a Clark gasoline station-service manager were reversed because the State presented evidence of a similar robbery by the defendant of another Clark station.) The criteria in section 111—4(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 111—4(a)) for consolidating different offenses which arise out of separate criminal transactions is whether the separate criminal transactions were a part of the same comprehensive transaction.

The defendant relied on *People v. Bricker* (1974), 23 Ill. App. 3d 394, 319 N.E.2d 255, in the trial court (and in this court) as authority for his opposition to the court's denial of the consolidation motion. In

my judgment, *Bricker* is controlling. Bricker was charged in count one of an indictment with the armed robbery of Wayne Wilkenson, the desk clerk at the Illinois House Hotel in Bloomington, around 3:30 a.m. on July 14, 1972. Count two alleged that Bricker committed the offense of armed robbery of John Murphy, an attendant at the Interstate Skelly Service Station south of Bloomington at Route 51 and I-74, around 12:30 a.m. on July 14, 1972. Bricker contended in his motion to sever the two counts for trial that the two offenses were distinct and independent crimes and that it was improper and prejudicial to try two unrelated armed robberies in the same trial. The State contended that the two counts of armed robbery represented two parts of what comprised an overall comprehensive transaction. The trial court denied the motion to sever. The jury found Bricker guilty on count I and acquitted him on count II. On appeal he assigned the trial court's denial of his severance motion as error. This court agreed, holding:

"The critical question is whether the two or more acts are part of 'the same comprehensive transaction.' (*People v. Petitjean*, 7 Ill. App. 3d 231, 287 N.E.2d 137.) * * *

*It is axiomatic that a defendant may not be placed on trial, over his timely objection, on an indictment charging separate offenses when it appears these offenses are not part of one and the same transaction, but are 'separate and distinct both in law and fact. [Citations.] A defendant cannot be forced to trial on disassociated felonies.' People v. Fleming* [(1970),] 121 Ill. App. 2d 97, 102, 257 N.E.2d 271, 273.

In this case, the defendant was charged with the commission of two armed robberies. The first armed robbery occurred around 12:30 A.M. at a service station located south of Bloomington on Route 51 on I-74 in McLean County. The second armed robbery occurred at approximately 3:30 A.M. at a hotel located in downtown Bloomington, several miles from the location of the first armed robbery. *There is nothing in the record to establish that there was a concerted plan of action or scheme on the part of the defendant that would link the two armed robberies. They are separate and independent felonious acts. Under the cited authority, the State should have tried defendant in separate proceedings for each offense.*" (Emphasis added.) *People v. Bricker* (1974), 23 Ill. App. 3d 394, 396-97, 319 N.E.2d 255.

The majority's rejection of *People v. York* (1975), 29 Ill. App. 3d 113, 329 N.E.2d 845, on which the defendant relies, in my judgment,

is ill-founded. I do not agree with the distinction which the majority cites to reject *York*.

In *York* a jury found the defendant guilty of two counts of aggravated incest with his two minor stepdaughters. On appeal the defendant contended for reversal that the two incest charges were improperly joined and tried in the same indictment. The State contended that the charges were based on two or more acts which were part of the same comprehensive transaction and were therefore properly brought in a single indictment under section 11—4(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 111—4(a)).

The court in *York* pointed out that the Committee Comments state that section 111—4 is based on Rule 8 of the Federal Rules of Criminal Procedure (18 U.S.C. Rule 8) and that Rule 8 provides that two or more offenses may be charged in the same indictment *if the offenses are of the same similar character* or based on two or more acts or transactions connected together *or constituting parts of a common scheme or plan.* The *York* court stated that had the legislature chosen to adopt Rule 8 in its entirety, it could have done so and the joinder of the two incest offenses in one indictment for trial would then have been proper in that the offenses were *similar in character, and constituted parts of a common scheme or plan.* The court continued that the legislature rejected the *similar character and the common scheme plan* as a basis for charging two or more offenses. Instead, the court continued, the legislature chose the *part of the same comprehensive transaction criteria* as a basis for charging multiple offenses in the same indictment or information. The court rejected the State's contention that the joinder of the incest offenses was proper and stated:

> "They were two distinct offenses, with different victims and dates. That the offenses were similar in nature does not, by itself, authorize joinder. (*People v. Bricker* 23 Ill. App. 3d 394, 319 N.E.2d 255 (1974).) The rule, as most often stated is that 'a defendant cannot, over his objection properly made, be placed on trial in an indictment charging separate offenses when it affirmatively appears they are not of one and the same transaction, but separate and distinct both in law and fact.' "
>
> *People v. York* (1975), 29 Ill. App. 3d 113, 117, 329 N.E.2d 845.

Rejecting the State's contentions that the common thread of sexual gratification, the same elements of proof, the common source of proof and the common investigation of both incest offenses were a valid basis for their joinder, the court stated in *York*:

"The sole common thread between the two series of acts was the defendant's desire for sexual gratification. Although the offenses themselves required the same elements of proof, the elements as to each daughter were proved by the testimony of each, independent of the other. That the secondary, corroborative evidence came from common sources was a product of a common investigation and does not affect the independence of the offenses themselves. We find that the offenses were separate and distinct, not constituting the same transaction, and that trial of both in the same proceeding was error." *People v. York* (1975), 29 Ill. App. 3d 113, 119, 329 N.E.2d 845.

The foregoing authorities relied on by the defendant are controlling in the case at bar.

In the trial court, the State relied on *People v. Mikel* (1979), 73 Ill. App. 3d 21, 391 N.E.2d 550, as authority for its consolidation motion. The majority also relies on *Mikel* as authority for its affirmance of the trial court's consolidation order. This reliance is misplaced. The two or more criminal acts involved in *Mikel* were part of the same comprehensive transaction. Mikel did not argue to the contrary in the trial court or in the appellate court. He agreed that the joinder was proper but argued that he was prejudiced in preparing for trial and during trial because of the joinder of the offenses. Relying on section 111—4 in his pretrial motion, Mikel requested a severance because of the alleged prejudicial joinder. The motion was denied.

In the multicount information Mikel and his codefendant, Charles W. Seaton, were charged with the aggravated assault of Gary Patton, the murder of Annie Nelson and the aggravated assault of Tyrone Grant. Mikel and Seaton were tried separately. Both were found guilty by a jury. The evidence established that Mikel and Seaton drank intoxicating beverages in a Danville tavern. Mikel and Seaton left the tavern. The appellate court pointed out in its opinion which affirmed Seaton's conviction that Seaton told the officers who arrested him that when he and Mikel left the tavern, Mikel said, " 'Let's get us a nigger' or something like that," and that Seaton said that he, Seaton, had a gun. (*People v. Mikel* (1979), 73 Ill. App. 3d 16, 17, 391 N.E.2d 550.)[1] Mikel and Seaton rode in Seaton's pickup truck to a Danville intersection where Mikel exchanged racial insults with a group of black men and women who were standing near the corner. Mikel fired a rifle out of the truck window.[2] He almost hit Gary Patton. This

---

[1]Seaton did not raise the prejudicial joinder issue in his appeal.

[2]Seaton's rifle was in a gun rack in Seaton's pickup truck.

shooting was the basis for Mikel's conviction for the aggravated assault of Gary Patton.

After Mikel shot at Patton, Seaton drove to another Danville intersection less than two blocks away where Mikel again fired the rifle out of the truck window. The shot killed Annie Nelson, a black who was a pedestrian on the street. This shooting was the basis of Mikel's murder conviction.

Still bent on their mission, Seaton drove a few blocks where he and Mikel came upon Tyrone Grant who was in his car. Mikel fired the rifle at Grant. The bullet went through the door on the driver's side of Grant's car but missed Grant. This shooting constituted the basis of Mikel's conviction of the aggravated assault of Tyrone Grant.

As previously stated, Mikel did not contend that his acts were not a part of the same comprehensive transaction. Rather, he contended that he was prejudiced by the joinder of the various offenses and that under section 111—4 he was entitled to a severance.

The *Mikel* shootings were a part of the same comprehensive transaction and were properly joined for trial. The court pointed out that the decision on whether or not to sever is a matter within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. (*People v. Mikel* (1979), 73 Ill. App. 3d 21, 27, 391 N.E.2d 550.) The court did not hold that the trial court had discretion to sever or join offenses which were not part of the same comprehensive transaction.

In holding that Mikel's shootings were acts which were part of the same comprehensive transaction and that the trial court did not abuse its discretion when it denied Mikel's severance motion, the court stated:

"In the instant case, the first aggravated assault and the murder occurred just minutes and less than two city blocks apart. The time and distance between the murder and the second aggravated assault was several minutes and a few miles. The evidence is strong that the alleged actions were part of a shooting spree engaged in by defendant [Mikel] and Seaton. Those actions, thus, were part of the same general transaction or scheme and show a common motive, design and method of operation. Substantially the same evidence could have been presented by the State at the trial of each offense. For these reasons, the denial of the defendant's motion for severance was not an abuse of discretion." *People v. Mikel* (1979), 73 Ill. App. 3d 21, 27-28, 391 N.E.2d 550.

*Mikel* is not analogous or applicable to the case at bar, nor is *Peo-*

*ple v. Tate* (1982), 106 Ill. App. 3d 774, 436 N.E.2d 272, on which the majority relies. In *Tate,* the four-count information charged the defendant with attempted rape and home invasion of Janice M. Blaylock and aggravated battery and home invasion of Irshell Rife. The evidence at trial established that during the early morning hours Janice M. Blaylock was grabbed by an assailant at the bottom of the stairs to her apartment. Blaylock grabbled with her assailant, who hit and kicked her and tore her slacks. Her assailant fled when Blaylock's nephew appeared and screamed. The jury acquitted Tate of the attempted rape of Blaylock but was unable to agree on the Blaylock home-invasion charge.

Regarding the Rife offenses, the evidence established that after Lettie Rife and her husband, Irshell, had gone to bed and fallen asleep, she was awakened by a hand on her shoulder and a sharp object against her neck. The man told her to be quiet and moved his hand across her chest. Rife pushed the man away and turned on a light. Her husband was stabbed by the assailant, who then fled. The jury found Tate guilty of the Rife aggravated-battery and home-invasion offenses.

On appeal, Tate asserted that the trial court abused its discretion in denying his motion to sever the Blaylock charges from the Rife charges. The court pointed out:

"When offenses are part of the same transaction, evidence that a defendant committed one of the offenses is probative as to his commission of the other. *When the offenses are not so related, probative value may not be present and there is danger that the jury may consider the evidence of the defendant's commission of one of the offenses as showing a propensity to have committed other offenses.* (Emphasis added.) *People v. Tate* (1982), 106 Ill. App. 3d 774, 776-77, 391 N.E.2d 550.

The offenses in *Tate* were committed in Danville, as were the offenses in *People v. Mikel* (1979), 73 Ill. App. 3d 21, 391 N.E.2d 550. The court in *Tate* reviewed its *Mikel* decision and concluded that "the situation" in *Tate* was analogous to *Mikel*.[3] (*People v. Tate* (1982), 106 Ill. App. 3d 774, 777, 436 N.E.2d 272.) The court observed in *Tate* that the Blaylock and Rife witnesses described the assailant's wearing apparel as a sleeveless red shirt and white trousers, that the assailant gained entrance by cutting through a door or window, that in each case the assailant used a knife, attacked a female and made sexual advances to her by attempting to remove her clothes and fled when he

---

[3]Presiding Justice Frederick S. Green authored both the *Tate* and *Mikel* opinions.

met resistance. The court further pointed out that because the defendant relied upon an alibi defense, the similarities between the attire and method of operation of the assailants at the two residences had probative value in negating that defense. The court concluded that the trial court did not abuse its discretion in denying Tate's severance motion. 106 Ill. App. 3d 774, 777, 436 N.E.2d 272.

The court did not explain in *Tate* how the assailant's wearing apparel, weapon, method of entry, sexual advances,[4] flight, or alibi defense established that the Blaylock acts and the Rife acts were part of the same comprehensive transaction. Crimes may be identically committed and the *modus operandi* of criminal conduct may be comparable, but neither establishes that such criminal acts were part of the same transaction. "No precise test has emerged for determining whether separate offenses are part of the same 'comprehensive transaction,' and each case turns largely upon the facts presented. [Citation.] *** The critical question is whether the defendant's two or more acts were part of 'the same comprehensive transaction,' [citations] ***. Important factors to be considered by the trial court in determining whether to sever charges for trial include the proximity of time and location of the various charges and the identity of evidence which would be presented to prove each charge." *People v. White* (1984), 129 Ill. App. 3d 308, 315, 472 N.E.2d 553.

The majority's reliance on *White* as authority for affirmance of the trial court's consolidation order in the case at bar is ill-founded. In *White* the defendant was charged with a January 19 theft, an August 26 burglary and an October 25 theft. The offenses were allegedly committed in 1982. The objects of the thefts and burglary were the same—shock absorbers—and were from the same store, the Merlin Muffler Shop, defendant's employer. The thefts were identically committed and the burglary was a deviation from the thefts to avoid detection of the thefts.

The court, in holding that the thefts and burglary offenses were part of the same comprehensive transaction, pointed out that the location of the offenses was the same, the State's witnesses were the same and that the State's evidence established the unauthorized removal on three occasions of shock absorbers from the Merlin Muffler Shop by the defendant, acting with others, and the conversion of the shock absorbers in each occasion into cash. (*People v. White* (1984),

---

[4]It is noteworthy that in *Tate*, the defendant was charged with a sex offense only in the Blaylock transactions and that the jury acquitted him of this alleged attempted-rape offense.

129 Ill. App. 3d 308, 316, 472 N.E.2d 553.) The court concluded in *White*:

> "[T]he evidence strongly shows that in all three instances the defendant capitalized on his position of employment in order to facilitate removal of the property owned by his employer from the place of his employment, and that conversion of the contraband into ready cash was accomplished by someone other than himself.
>
> Based on the record, it is not unreasonable or illogical to believe the change in the 'usual' means of removing the shock absorbers from the packaging switch/dumpster/retrieval method to the burglary format was strictly an attempt to vary the *modus operandi* in order to draw police suspicion away from an employee theft theory. As such, the theft and burglary offenses were, in the large comprehensive view, part of the same general transaction or scheme. The offenses constituted concerted, systematic theft from the Merlin Muffler Shop over a period of time." 129 Ill. App. 3d 308, 317, 472 N.E.2d 553.

In *People v. Peterson* (1982), 108 Ill. App. 3d 856, 439 N.E.2d 1103, also relied on by the majority, the defendant was tried for driving under the influence of intoxicating liquor and resisting a peace officer. The defendant drove 30 to 40 feet off the road into a soybean field and was asleep and slumped over the steering wheel when the officer arrived. The defendant had an odor of alcohol on his breath. He refused to get out of his car and slumped back into the car when the officer attempted to pull him from the car. Thirty minutes later when a tow truck arrived, the tow-truck driver assisted the officer in taking the defendant out of the car. The court held that no error occurred because of the joinder of the offenses for trial.

*People v. Duncan* (1985), 133 Ill. App. 3d 489, 478 N.E.2d 1125, on which the majority relies, is not analogous to the case at bar. In *Duncan*, William Duncan and Perry Olinger were jointly charged with the murders of James Adams in Rock Falls, Illinois, and of Gordon Stevens and Debbie Bushman in nearby Sterling, Illinois, on May 25, 1982. They were also charged with armed robbery, armed violence and conspiracy, which offenses were interwoven with the murder offenses. Duncan, a former employee of Ed Kline, introduced Adams to Kline, who sold drugs to Adams in Kansas City. Adams and Duncan returned to Rock Falls, Illinois. Later, Duncan was discovered in Adams' house where Adams was found, cut and bludgeoned to death. The same morning, Stevens and Bushman were found shot to death in their home in Sterling. In response to Duncan's assertion that there

was no apparent connection between the two occurrences, the trial court stated:

> "We disagree.
>
> We believe the crimes were sufficiently related in time and distance to be properly joined. We are also of the opinion that the offenses were part of the same comprehensive transaction and, therefore, properly joined. It was disclosed that Olinger wanted to eliminate Adams and run the drug operations in the area. Further, that he would not leave any witnesses behind. Stevens could have tied Olinger to the Adams murder, and because of this he was also murdered. This was sufficient evidence to connect the two occurrences." 133 Ill. App. 3d 489, 496, 478 N.E.2d 1125.

It is clear to me that the foregoing authorities relied on by the majority are not similar or comparable to the case before us and that they are therefore not controlling. It is equally clear that the joinder of the offenses of the two distinct criminal transactions in the case at bar was prejudicial and was unauthorized by section 111—4(a) of the Criminal Code of 1961. (Ill. Rev. Stat. 1985, ch. 38, par. 111—4(a).) I would therefore reverse the judgments of conviction and remand for a new trial with directions that the two indictments be tried separately.